UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| ZACHERY ALFRED | CIVIL ACTION |
|---|---|
| VERSUS | NO: 13-211-JWd-RLB |
| ANADARKO PETROLEUM CORPORATION AND DOLPHIN SCAFFOLDING SERVICES, LLC | JUDGE JOHN W. deGRAVELLES |
| | MAG. RICHARD L. BOURGEOIS, JR. |

## ORDER

Before the Court is Defendant Anadarko Petroleum Corporation's (hereinafter "Anadarko") Motion for Summary Judgment. (Doc. 28.) Plaintiff filed an Opposition (Doc. 33.) and Anadarko filed a Reply. (Doc. 41.) A Pre-Trial Conference was held on November 13, 2014, at which Anadarko's Motion was discussed.

Accordingly, and for the reasons articulated below, Anadarko's Motion for Summary Judgment is GRANTED.

**I.  Background**

In his Complaint, Plaintiff Zachery Alfred alleges he was injured on December 2, 2012 when he fell from scaffolding while working aboard the Marco Polo platform. (Doc. 1, ¶ IV.) Plaintiff alleges he was an employee of Omni Energy Services (hereinafter "Omni") (Doc. 1, ¶ IV), working atop scaffolding built by Defendant Dolphin Scaffolding Services, L.L.C. (hereinafter "Dolphin") when he slipped and fell. (Doc. 1, ¶ IV). The Marco Polo structure where the accident occurred is owned by Anadarko. (Doc. 28, p. 1.)

Evidence in the record establishes that the Marco Polo is a tension Leg platform located in Green Canyon Block 608 and is embedded in the subsoil and seabed by eight 28-inch diameter

tendons with a 1.2 inch wall thickness. (Doc. 47-1, p. 1.)[1] The tendons are secured to the seabed by piles measuring 390 feet with a 76 inch diameter. (Doc. 47-1, p. 1.) The Marco Polo has no system of self-propulsion, no lateral mooring system, no raked bow, and is not intended to be towed or moved from place to place. (Doc. 47-1, p. 1.) It has been affixed to the subsoil of Green Canyon Block 608 since 2004. (Doc. 47-1, p. 1.) The Marco Polo is located approximately 160 miles from the coast of Louisiana, south of New Orleans, on the Outer Continental Shelf. (Doc. 47-1, p. 1.) It has several active wellheads and was attached to the subsoil and seabed to explore for, develop and produce natural resources, including oil and natural gas. (Doc. 47-1, p. 1.)

## II.     Arguments of Parties

In its Motion for Summary Judgment (Doc. 28), Anadarko argues that it committed no wrong that contributed to Plaintiff's accident and that its only connection to this case is that it owned the platform on which the injury occurred. (Doc. 28, p. 1.) Anadarko argues that it entered into separate Master Service Contracts (hereinafter, "MSCs") with both Dolphin and Omni under which Dolphin and Omni were independent contractors responsible for performing their work in a safe manner and under which Anadarko had no control over Dolphin or Omni. (Doc. 28-1, p. 1, 5 & 6.)

Anadarko argues that a principal is not liable for the negligent acts of its independent contractor. (Doc. 28-1, citing *Iglesias v. Chevron, U.S.A., Inc.*, 656 F. Supp. 2d 598, 601 (E.D. La. 2009.) Anadarko further argues that it was not independently negligent because it was not involved in nor did it exercise control over the operation and had no duty to intervene to ensure the safety of the operation. (Doc. 28-1, p. 12.)

Plaintiff opposes Anadarko's Motion for Summary Judgment. (Doc. 33.) In his Opposition,

---

[1] While the Declaration providing this information was submitted in connection with an unrelated motions [Doc. 47], the Court may take these into consideration for purposes of this motion. Fed. R. Civ. P. 56(c)(3).

Plaintiff argues that Anadarko has not proven that the scaffolding was owned by Dolphin[2] and that questions of fact exist as to whether Anadarko can contractually relieve itself of obligations imposed by law. (Doc. 33, p. 1-3.) Plaintiff also questions whether Anadarko has offered sufficient evidence to show that it was not independently negligent. (Doc. 33, p. 5-7.)

In its Reply to Plaintiff's Opposition, Anadarko argues that Plaintiff's arguments are contrary to Fifth Circuit precedent, and that the fact questions surrounding Plaintiff's comparative fault are immaterial to the legal arguments raised in its motion. (Doc. 41, p. 2.) Anadarko asserts that the statutes cited by Plaintiff raise no duty on the part of Anadarko and that Plaintiff has proven no private cause of action exists as to it. (Doc. 41, p. 3-7.) Finally, Anadarko points out that Plaintiff has cited no evidence to refute his sworn testimony that Dolphin owned, constructed, and maintained the scaffolding. (Doc. 41, p. 8.)

### III. Standard on Motion for Summary Judgment

Summary judgment shall be granted when there are no genuine issues of material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex v. Carrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*. at 248-49, 106 S.Ct. 2505. In order to grant a motion for summary judgment, the Court must be satisfied "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."

---

[2] In Opposition to a separate Motion for Summary Judgment filed by Anadarko, Dolphin does not dispute that it is the owner of the scaffolding. (Doc. 37.)

*Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. However, if the dispositive issues is one on which the nonmoving party will bear the burden of proof at trial, the nonmoving party may satisfy the burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the non-moving party's claim. *Id*. at 325, 106 S. Ct. 2548; *Lavaspere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referencing evidence, set out specific facts showing that the genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

The non-movant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Id*. at 325, 106 S. Ct. 2548; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994). The non-movant's burden in a summary judgment motion is not satisfied by conclusory allegations, unsubstantiated assertions, or by a mere scintilla of evidence. *Liquid Air Corp.*, 37 F.3d at 1075. Instead, "[t]he non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation marks omitted). If the non-moving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-250, 106 S. Ct. 2505.

**IV.   Law Applicable to the Marco Polo**

OCSLA governs activity undertaken "for the purpose of exploring for, developing or producing" resources from the Outer Continental Shelf:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily

attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ***.
43 U.S.C. § 1333(a)(1).

The Marco Polo is attached to the seabed of the Outer Continental Shelf for the purpose of exploring for, developing or producing resources therefrom. (Doc. 47-1, p. 2.) The Marco Polo is an OCSLA situs and therefore Plaintiff's cause of action is governed by the provisions of OCLSA.[3]

If a dispute "arises out of" one of the enumerated activities set forth in § (a)(1), OCSLA mandates that the dispute is governed by "the law of the adjacent state" to the extent the law is "applicable" and "is not inconsistent....with other federal laws:"

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State *** are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf *** 43 U.S.C. § 1333(a)(2)(A)

To determine whether OCSLA requires the application of state law, the 5th Circuit has followed "in a number of cases" a three-part test formulated in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969).[4] "As we articulated the *Rodrigue* test in [*Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)], for state law to apply as surrogate federal law, three conditions must be met: '(1) the controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).

---

[3] While not binding on this Court, the Eastern District has previously ruled that the Marco Polo is an OCSLA situs. *Leblanc v. W-Industries of Louisiana, LLC*, 2008 WL 2781537 (E.D. La. 2008). We agree. As the Eastern District noted, "[t]he Marco Polo, which services six delineation wells, is anchored to the seabed and located in Green Canyon Block 608, which is approximately 150 miles south of New Orleans on the Outer Continental Shelf ("OCS") in the Gulf of Mexico." *Id.*

[4] The 5th Circuit has acknowledged that the case law in this area is "conflicting and confusing." *Grand Isle Shipyard v. Seacor Marine, LLC*, 589 F.3d 778, 786 (5th Cir. 2009).

(2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.'" *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009), quoting *PLT*. See also *Hamm v. Island Operating Co., Inc.* 450 Fed. Appx. 365, 367-368 (5th Cir. 2011); *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 808 F.Supp.2d 943, 952 (E.D. La. 2011).

Plaintiff has not questioned the OCSLA situs of the accident. The accident occurred not on navigable waters but rather, on a tension leg platform, to a platform worker, and therefore Federal maritime law does not apply of its own force. *Grand Isle Shipyard*, 589 F. 3d at 784, citing *Rodrigue,* 395 U.S. at 355. No party has argued that there is some other applicable but inconsistent Federal law. Therefore, Louisiana provides the law applicable to this case.

## V. Liability of Principal for Negligent Acts of Independent Contractor

Under Louisiana law, a principal cannot be held liable for the negligent acts of its independent contractor unless (1) the activity being performed is ultra-hazardous or (2) the principal exercises operational control over the independent contractor's performance of the activity. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549-550 (5th Cir. 1987); *Iglesias v. Chevron, U.S.A., Inc.,* 656 F. Supp. 2d 598 (E.D. La. 2009);

In this case, the MSCs clearly provided that Anadarko and Omni were independent contractors of Anadarko. (Doc. 28-5,p. 3; Doc. 28-6, p. 2.) This point is undisputed by the parties. Furthermore, "[t]he plaintiff does not contest that the events surrounding the accident [did] not involve an ultra-hazardous activity." (Doc 13, p. 3.) Finally, Plaintiff has offered no evidence to contradict the evidence put forward by the Anadarko that it exercised no operational control over the operation being performed at the time of the accident. Therefore, Anadarko can only be liable if it is independently at fault under La. C.C. arts. 2315 and/or 2317 and 2317.1

## VI. Anadarko's Independent Fault

Plaintiff argues that Anadarko is liable under La. C.C. art. 2315 for negligence in causing the Plaintiff's accident. However, Plaintiff points to no evidence to support this position. Further, Plaintiff admitted in his deposition that Anadarko had nothing to do with his accident. (Doc. 28-1, p. 12, citing Plaintiff's Deposition, p. 37.) This testimony is not contradicted by any evidence put forward by the Plaintiff.

Further, platform owners have no duty to protect individuals from hazards created by their independent contractors about which they are unaware. *Venezia v. Conoco Phillips Co.*, 2014 WL 107962 (E.D. La. 2014). Likewise, platform owners owe no duty to intervene and protect or stop the unsafe acts of their independent contractors about which they are unaware, even if such intervention could have prevented an accident from occurring. *Ainsworth v. Shell Offshore,* 829 F.2d 548, 550 (5th Cir. 1987). Therefore, Plaintiff has raised no material issue of fact regarding Anadarko's negligence.

Anadarko argues that it cannot be held liable under La. C.C. arts. 2317 and 2317.1 because Plaintiff cannot prove that Anadarko was "in custody of the object that is the cause of the plaintiff's injury." (Doc. 28-1, p. 14.) La. C.C. Art. 2317 provides that "[w]e are responsible not only for the damage occasioned by our own act, but for that which is caused by...the things which we have in our custody." Article 2317.1 provides additionally:

> [t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon showing that he knew or, with the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise reasonable care.

A person has custody or "garde" of things for purposes of Arts. 2317 and 2317.1 if he "bears such a relationship [to them] as to have the right of direction and control over them and to draw some kind of benefit from them." *King v. Louviere*, 543 So.2d 1327, 1329 (La. 1989) (emphasis

added). See also *Marshall v. Air Liquide-Big Three, Inc.*, 107 So.3d 13, 39 (La. App. 4th Cir. 2012)*;* *Graubarth v. French Mkt. Corp.*, 07-0416, p. 4 (La. App. 4 Cir. 10/24/07), 970 F.2d 660, 664.

Under most circumstances, ownership alone is sufficient to establish the requisite benefit, control and authority to find custody or garde. *Doughty v. Insured Lloyds Ins. Co.*, 576 So.2d 461, 464 (La. 1991). Ownership gives rise to a presumption of garde but this presumption is rebuttable if the owner can prove that he neither derives benefit from nor has the legal or practical right to control the thing. *Id.*[5] Indeed, "the courts have recognized the reality that custody or "*garde*" is a broader concept than ownership and custody or *garde* may be shared by multiple parties." *Marhall, supra* at 39 quoting *Leaman v. Cont'l Cas. Co.*, 798 So.2d 285, 289 (La. App. 4th Cir. 2001).

Plaintiff stated in his deposition that the object that caused his injury was the scaffolding constructed by Dolphin. (Doc. 28-1, p. 14, citing Plaintiff's Deposition, p. 130.) Plaintiff argues however, that the area where the accident took place was defective and contributed to the accident because there was no place on which the plaintiff could tie a safety lanyard. (Doc 33, p. 2, quoting Plaintiff's deposition at pp. 82-83).

Although Anadarko neither owned or constructed the scaffolding, it is possible that Anadarko, as owner, had garde of the area where the accident occurred, i.e. had the right to control the area and to derive benefit from it. But even if it did, there is no evidence that Anadarko knew or reasonably should have known of the alleged defect in the area or that it could or should have, with the exercise of reasonable care, corrected it. Indeed, the un-rebutted evidence put forward by Anadarko has shown that it maintained no control over the scaffolding or work area and played no role in the construction of the scaffolding or the operation being performed by Plaintiff at the time

---

[5] In *King*, *supra*, the Louisiana Supreme Court found that the owner of an automobile "continu[ed] to have the garde of it and to be responsible for the damage caused by it even while it was in the physical custody of another." 543 So.2d at 1330. In *Doughty*, *supra*, the same court held that the wife of a lumber mill owner did not have garde of an allegedly defective planer at her husband's mill where she derived only minimal benefit from it and had, "[i]n a practical sense, no control or authority over it." 576 So. 2d at 464.

of his injury. Therefore, Anadarko cannot be held liable for the injury caused by the scaffolding under La. C.C. art. 2317 or 2317.1.

**VI. Anadarko's Alleged Obligations under the Code of Federal Regulations**

Plaintiff admits that the activity in which he was engaged at the time of the accident was not ultra-hazardous. (Doc. 33, p. 3.) He further admits that the evidence gathered to date does not show that Anadarko exercised operational control over the activities being conducted at the time of the accident. (Doc. 33, p. 3.)

However, Plaintiff argues that Anadarko has legal obligations of its own under the Code of Federal Regulations which was part of the consideration for it receiving the right from the federal government to drill on the OCS and that Anadarko should not be allowed to contractually relieve itself of those obligations through MSCs with Omni and Dolphin. (Doc. 33, p. 3.)

Plaintiff argues that under 30 C.F.R. § 250.20, Anadarko, as lessee of the accident site on which its platform was constructed, has legal responsibilities which require that it conduct all operations in a safe and workmanlike manner. (Doc. 33, p. 3, citing 30 C.F.R. § 250.20.) Plaintiff also argues that 30 C.F.R. § 142.4 requires that the platform be maintained in compliance with workplace safety and health regulations and be free from recognized hazards. (Doc. 33, p. 3, citing 30 C.F.R. § 142.4.)

Plaintiff cites *Romero v. Mobil Exploration and Producing North America, Inc.*, 939 F.2d 307, 311 (5th Cir. 1991) to say that "Louisiana law does recognize that applicable federal regulations may be relevant evidence in weighing a Defendant's culpability." In that case, the Court considered the Restatement (Second) of Torts, § 424 (1965) and its comments, which provide that a principal with a duty to provide safeguards and precautions cannot delegate this duty to an independent contractor.

The plaintiff in *Romero* argued that the MMS regulations at issue imposed on the Defendant

the type of duty described in section 424 and that its failure to provide a properly trained individual at the location of the accident gave rise to liability which would otherwise be barred by the independent contractor doctrine.

> The Fifth Circuit did not agree. The Court stated:
>
> In an Outer Continental Shelf Lands Act (Lands Act), 43 U.S.C. § 1331 et seq., case, the law of the adjacent state, in this instance Louisiana, becomes the law of the United States provided it is not inconsistent with federal law or regulations. 43 U.S.C. § 1333(a)(2)(A). We conclude that no Louisiana cause of action arises merely from the breach of MMS regulations because the regulations were not created solely to "provide safeguards or precautions for the safety of others." Rather, they are but a small part of a comprehensive land use scheme which specifically includes compensation for persons injured or killed and punishment for violators.
>
> *Romero*, *supra*, at 309.

The Court held that while a violation of regulations can be considered in judging the Defendant's culpability, these regulations do not alone form an independent basis for the imposition of liability for negligence. *Romero, supra*, at 311.

We are bound by the Fifth Circuit's ruling in *Romero*. The Code of Federal Regulations does not create an independent cause of action by which Anadarko could be liable for insuring that all work done by sub-contractors on its platforms is done in a safe and workmanlike manner. Because these provisions create no independent basis for liability on behalf of Anadarko, we do not reach the question of whether Anadarko could or did dispense with such obligations contractually.

### VII.   Conclusion

The Oppositions filed to Anadarko's Motion for Summary Judgment raise no genuine issues of material fact as to whether an independent or statutory basis exists for the imposition of liability on Anadarko.

Accordingly,

IT IS ORDERED that Anadarko's Motion for Summary Judgment (Doc. 28) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Zachery Alfred's claims against Defendant Anadarko Petroleum Corp. are DISMISSED.

Signed in Baton Rouge, Louisiana, on November 21, 2014.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**