## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ZACHERY ALFRED | CIVIL ACTION |
| VERSUS | NO: 13-211-JWd-RLB |
| ANADARKO PETROLEUM CORPORATION AND DOLPHIN SCAFFOLDING SERVICES, LLC | JUDGE JOHN W. deGRAVELLES |
| | MAG. RICHARD L. BOURGEOIS, JR. |

## ORDER

Before the Court are Defendant Anadarko Petroleum Corporation's (hereinafter "Anadarko") Motion for Summary Judgement (Doc. 30) and OMNI Energy Services and Charles Holston's Motion for Summary Judgment. (Doc. 31.) Dolphin has filed an Oppositions (Docs. 37 & 38) to which Anadarko, Charles Holston and Omni Energy Services Corp. have replied (Docs. 45 & 47). A Pre-Trial Conference was held on November 13, 2014, at which time Anadarko's Motions were discussed.

Accordingly, for the reasons articulated below, Anadarko's and Omni's Motions for Summary Judgment (Docs. 30 & 31) are DENIED without prejudice.

## I.    Background and Arguments of the Parties

In his Complaint, Plaintiff Zachery Alfred alleges he was injured on December 2, 2012 when he fell from scaffolding while working aboard the Marco Polo platform. (Doc. 1, ¶ IV.) Plaintiff alleges he was an employee of Omni Energy Services (hereinafter "Omni") (Doc. 1, ¶ IV), working atop scaffolding built by Defendant Dolphin Scaffolding Services, L.L.C. (hereinafter "Dolphin") when he slipped and fell. (Doc. 1, ¶ IV). The Marco Polo structure where the accident occurred is owned by Anadarko. (Doc. 28, p. 1.)

Prior to the occurrence of the accident, Dolphin entered into a Master Service Contract

(hereinafter "MSC") with Anadarko pursuant to which Dolphin would provide services to Anadarko. (Doc. 16, ¶ VI.) Dolphin alleges that in the MSC, Anadarko agreed to assume liability for and to defend and indemnify Dolphin Services against claims arising in connection with bodily injury to employees of Anadarko's contractors, subcontractors and invitees arising out of or resulting from performance of the MSC, regardless of fault. (Doc. 16, ¶ VI.)

Following the filing of Plaintiff's suit, Dolphin filed a cross-claim, asserting that Alfred was an employee of Omni and that Omni was a contractor or subcontractor of Anadarko or an invitee of Anadarko. (Doc. 16, ¶ VIII.) Dolphin claims the MSC obligates Anadarko to pay and/or reimburse Dolphin for attorney's fees and expenses incurred, court costs, and other related costs and expenses arising in connection with the claim asserted by Alfred. (Doc. 16, ¶ IX.)

Anadarko filed the present Motion for Summary Judgment arguing that the Outer Continental Shelf Lands Act and U.S. Fifth Circuit law dictate that the MSC entered into between the parties is null and void. (Doc. 30, p. 1.) Anadarko argues that because the focus of the MSC is a fixed platform located on the Outer Continental Shelf, the Outer Continental Shelf Lands Act (hereinafter "OCSLA") applies and mandates that the law of the adjacent state governs this case. (Doc. 30, p. 1.) Anadarko argues that because Louisiana law governs via OCSLA, the Louisiana Oil Field Anti-Indemnity Act (hereinafter "LOIA") invalidates the indemnity obligations imposed by the MSC. (Doc. 30-1, p. 2.)

Dolphin filed a similar third-party claim against Omni and Holston. (Doc. 24.) Therein, Dolphin claims that Charles Holston entered into an MSC with Anadarko pursuant to which Holston would provide services to Anadarko. (Doc. 24, ¶ VII.) Dolphin claims that in the MSC, Holston agreed to assume liability for and to defend and indemnify Anadarko against claims arising in connection with bodily injury to employees of Anadarko's contractors, subcontractors and invitees

arising out of or resulting from performance of the MSC, regardless of fault. (Doc. 24, ¶ IX.)

Dolphin claims that Alfred was an employee of Omni and that Omni was a sister or related company to Charles Holston, Inc., and as such is bound by the MSC (Doc. 24, ¶ X.) Dolphin claims the MSC obligates Holston and Omni (hereinafter collectively referred to as "OMNI") to pay and/or reimburse Dolphin for attorney's fees and expenses incurred, court costs, and other related costs and expenses arising in connection with the claim asserted by Alfred. (Doc. 24, ¶ XIII.)

Omni filed a Motion for Summary Judgment arguing that the Outer Continental Shelf Lands Act and U.S. Fifth Circuit law dictate that the MSC entered into between the parties is null and void. (Doc. 31-1, p. 1.) Anadarko argues that because the focus of the MSC is a fixed platform located on the Outer Continental Shelf, the Outer Continental Shelf Lands Act (hereinafter "OCSLA") applies and mandates that the law of the adjacent state governs this case. (Doc. 31-1, p. 2.) Anadarko argues that because Louisiana law governs via OCSLA, the Louisiana Oil Field Anti-Indemnity Act (hereinafter "LOIA") invalidates the indemnity obligations imposed by the MSC. (Doc. 31-1, p. 2.)

## III.    Standard on Motion for Summary Judgment

Summary judgment shall be granted when there are no genuine issues of material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex v. Carrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* at 248-49, 106 S.Ct. 2505. In order to grant a motion for summary judgment, the Court must be satisfied "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagra Mach.*

*& Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. However, if the dispositive issues is one on which the nonmoving party will bear the burden of proof at trial, the nonmoving party may satisfy the burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the non-moving party's claim. *Id.* at 325, 106 S. Ct. 2548; *Lavaspere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referencing evidence, set out specific facts showing that the genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

The non-movant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Id.* at 325, 106 S. Ct. 2548; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The non-movant's burden in a summary judgment motion is not satisfied by conclusory allegations, unsubstantiated assertions, or by a mere scintilla of evidence. *Liquid Air Corp.*, 37 F.3d at 1075. Instead, "[t]he non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation marks omitted). If the non-moving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-250, 106 S. Ct. 2505.

## IV.     Law Applicable to the MSC

OCSLA governs activity undertaken "for the purpose of exploring for, developing or producing" resources from the Outer Continental Shelf:

(1) The Constitution and laws and civil and political jurisdiction of the United States

are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ***.
43 U.S.C. § 1333(a)(1).

The Marco Polo is attached to the seabed of the Outer Continental Shelf for the purpose of exploring for, developing or producing resources therefrom. (Doc. 47-1, p. 2.) The Marco Polo is an OCSLA situs and therefore Plaintiff's cause of action is governed by the provisions of OCLSA.[1]

If a dispute "arises out of" one of the enumerated activities set forth in § (a)(1), OCSLA mandates that the dispute is governed by "the law of the adjacent state" to the extent the law is "applicable" and "is not inconsistent....with other federal laws:"

> (2)(A) To the extent that they are applicable and not inconsistent with this sub-chapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State *** are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf *** 43 U.S.C. § 1333(a)(2)(A)

To determine whether OCSLA requires the application of state law, the 5th Circuit has followed in a number of cases a three-part test formulated in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969).[2] "As we articulated the *Rodrigue* test in [*Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)], for state law to apply as surrogate

---

[1] While not binding on this Court, the Eastern District has previously ruled that the Marco Polo is an OCSLA situs. *Leblanc v. W-Industries of Louisiana, LLC*, 2008 WL 2781537 (E.D. La. 2008). We agree. As the Eastern District noted, "[t]he Marco Polo, which services six delineation wells, is anchored to the seabed and located in Green Canyon Block 608, which is approximately 150 miles south of New Orleans on the Outer Continental Shelf ("OCS") in the Gulf of Mexico." *Id.*

[2] The 5th Circuit has acknowledged that the case law in this area is "conflicting and confusing."*Grand Isle Shipyard v. Seacor Marine, LLC*, 589 F.3d 778, 786 (5th Cir. 2009).

federal law, three conditions must be met: '(1) the controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.'" *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009), quoting *PLT*. See also *Hamm v. Island Operating Co., Inc.* 450 Fed. Appx. 365, 367-368 (5th Cir. 2011); *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 808 F.Supp.2d 943, 952 (E.D. La. 2011).

In *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009), the Fifth Circuit determined that in a claim for indemnity based on a contractual obligation, a focus-of-the-contract test should be applied at the first step of the *PLT* analysis to determine whether the controversy arose on a situs covered by OCSLA. A contractual dispute arises on an OCSLA situs if a majority of the work called for by the contract is performed on stationary platforms or other enumerated OCSLA situses. The court stated:

> Once we recognize that the claim for indemnity is a claim based in contract rather than in tort, we see no reason to apply tort analysis to determine where the contractual controversy arose. It makes more sense to apply a focus-of-the-contract test and say that a contractual dispute-the "controversy" under the first condition of the PLT test-arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses.

> This approach is sounder because it applies contract principles rather than tort principles to a contract case. Applying tort rules would allow the fortuitous location of an accident to determine the situs—and the applicable law—of a contractual controversy. The tort-situs approach prevents commercial parties from reliably allocating risk in their contractual arrangements because they have no way of predicting where "controversies" might arise and thus no way of knowing which law will govern.

> Using contract principles to establish the situs of a contractual dispute both maintains the longstanding rule treating contractual indemnity claims as separate from underlying tort claims and grants contracting parties a far greater measure of predictability and stability in allocating risk.

*Id.* at 787.

Under this test, a controversy arises on an OCSLA situs "if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses." *Grand Isle*, 589 F. 3d at 787. If "the contract consists of two parts, a blanket contract followed by later work orders, the two must be interpreted together in evaluating whether maritime or land law is applicable to the interpretation and enforceability of the contract's provisions." *Davis & Sons v. Gulf Oil Corp.*, 919 F.2d 313, 315–17 (5th Cir.1990). "Generally, each work order is for a discrete, relatively short-term job. Unless a contrary intent is reflected by the master contract and the work order, in determining the situs in a contract case ..., courts should ordinarily look to the location where the work is to be performed pursuant to the specific work order rather than the long term blanket contract." *Grand Isle Shipyard*, 589 F.3d at 787 n. 6.

The evidence submitted in support of the Motions for Summary Judgment (Docs. 30-2, 31-2. 55 & 55-1) fails to address the test set out in Grand Isle Shipyard: is the focus of the contract OCSLA situses, more specifically, whether "a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses." *Id.* The joint stipulation and affidavit recently submitted (Docs. 55 & 55-1) to the effect that 100% of the work on the Marco Polo was being done pursuant to the MSCs "and informal work orders" do not address this issue. Specifically, the affidavit and other supporting documents only address the Marco Polo but do not address other work situses subject to the MSC. Furthermore, the phrase "and informal work orders" suggests that, even as to the Marco Polo, work was being performed outside the MSC.

Therefore, based on the evidence now before the court, Anadarko and Omni have failed to meet their burdens and the Motions for Summary Judgment (Doc. and 30 & 31) are not proper at this time.

## V.    Conclusion

Anadarko and Omni have failed to meet their burden of proof to show that "a majority of the

work called for by the contract[s] is on stationary platforms or other OCSLA situses." *Id.* Accordingly, Anadarko's and Omni's Motions for Summary Judgment (Docs. 30 & 31) are DENIED without prejudice. Anadarko and Omni may file Motions for Reconsideration on or before December 8, 2014 supported by evidence as to the focus of the MSCs.

Signed in Baton Rouge, Louisiana, on <u>November 26, 2014</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**